UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CONSTANCE MORRIS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 04-2086 |
| KAYDON CORPORATION and TRIDAN INTERNATIONAL, | ) |
| Defendants. | ) |

# OPINION

On December 24, 2003, Plaintiff Constance Morris filed a two count complaint against Defendants Kaydon Corporation and Tridan International alleging sex discrimination pursuant to Title VII of the Civil Rights Act of 1964 and a claim under the Equal Pay Act. On May 4, 2004, Judge Jeanne E. Scott transferred this case to the Urbana Division of the Central District of Illinois from the Springfield Division. On August 18, 2005, Defendants filed a Motion for Summary Judgment (#24), and the matter is now fully briefed. For the reasons that follow, the Motion for Summary Judgment is GRANTED.

FACTS

Tridan manufactures machinery for the production of evaporators and condensers commonly used in manufacturing air conditioning and refrigeration systems. Kaydon Acquisition XII, Inc., owned by Kaydon Corporation, acquired Tridan on August 28, 2000. Prior to this acquisition,

Tridan was a privately held corporation.

Although not earning a degree, Morris took classes in finance, accounting, law, English, and business at Oklahoma City Community College. She further earned a paralegal degree from the University of Oklahoma Law Center. Prior to working at Tridan, Morris worked at City Springs Works in Oklahoma City from May 1974 through September 1991 as assistant controller. After leaving that position, Morris worked at Transwestern Video as an administrative assistant from September 1991 through December 1992. Morris asserts she performed all accounting and bookkeeping responsibilities for twenty companies at this position. From January 1993 to March 1993, Morris worked at the National Association of Credit Managers as accountant, office manager, and collection manager. Immediately before starting at Tridan, Morris worked at R.R. Donnelly for three months as a temporary accounting assistant.

Morris began her employment with Tridan in June 1993 as a temporary accounting assistant. Morris was hired by June Hall, the controller of Tridan at the time. In September 1993, Morris became a full time accounting assistant. In 1995, Morris was promoted to the position of assistant controller. In this position, Morris managed the payroll, accounts receivable and payable, completed journal entries, dealt with the shipping department, reviewed letters of credit, and trained two clerks who supported her. At the time Morris served as assistant controller, she also became the human resource manager. Morris had received certification as a professional human resource manager in 1997.

June Hall retired in 1995 and was replaced by Connie Thallamer as the controller. Thallamer was a certified public accountant and received a salary of $31,000 per year. After six months of being employed at Tridan, Thallamer's employment was terminated for cause. Ivan Fink replaced

Thallamer while Morris was still assistant controller, initially receiving a salary of $40,000.[1] Fink was terminated for cause in 1998, and Morris was promoted to the position of controller. Morris's initial pay as controller was $38,000 per year. While working as controller, Morris continued to serve as human resource manager. Morris received a raise in June and December of 1998 and a $5,000 bonus at the end of 1998.[2] In January 1999, Morris was earning $40,000 per year. In January 2000, Morris was given a raise to $43,000 per year plus a year-end merit bonus. At the end of 2000, Morris received a $10,000 merit bonus. Morris reported to Chuck Holmes, Dan Grossman, and Jeff Kunkle. Chuck Holmes was the president and CEO of Tridan prior to its purchase by Kaydon. After Tridan was acquired by Kaydon, Holmes became the general manager. Dan Grossman served on the board of directors for Tridan and performed general oversight for the company. Jeff Kunkle was the division controller and was responsible for overseeing the accounting for all of Grossman's companies.

As controller, Morris took on the additional responsibilities of closing the books, tracking inventory, working with accountants in filing taxes, managing bank accounts, signing checks, approving letters of credit, assisting sales people with inventory issues, evaluating the revenue generated at jobs, tracking jobs, supervising additional office employees, managing the general ledger, producing reports and financial statements for managers, tracking research and development

---

[1] While Thallamer was a certified public accountant, Fink was not. However, Fink had more experience than Thallamer, who was a recent college graduate when she started at Tridan.

[2] Tridan bought Indiana Precision in 1998, and Morris became the controller and human resource manager for Indiana Precision. Thus, from March 1998 to March 2001, Morris served as controller, chief financial officer, and human resource manager for both Tridan and Indiana Precision.

costs, and preparing employee records. Morris also provided proposals to improve profitability to Holmes, including recommendations on reducing insurance premiums and on purchasing cheaper products from vendors. After Kaydon purchased Tridan, Morris met with John Brocci, the vice president of administration for Kaydon, to discuss issues related to the adoption and integration of Kaydon polices, procedures, and practices. Brocci expected Morris to produce weekly flash reports, as well as doing forecasting, budgeting, and planning. Morris worked with Brocci to set up new job descriptions, benefits packages, and the new retirement plan, as well as going over the corporate integrity program.

Jerold Benjamin was hired by Kaydon as a group controller on August 28, 2000. Benjamin's job duties included supporting the accounting functions at Tridan, Indiana Precision, and Canfield Technologies,[3] and integrating their financial reporting to Kaydon. Benjamin would visit Tridan each month, and anytime Morris had a question about what Kaydon was wanting, she would call him. When Benjamin reviewed Tridan's balance sheet immediately after Kaydon purchased the company, he noticed several areas in Tridan's books that were not in accordance with generally accepted accounting principles. In an affidavit, Benjamin indicates he became more involved in the accounting functions of Tridan and Indiana Precision after Kaydon's acquisition because of various accounting issues at Tridan. Research and development costs were improperly capitalized as inventory, although Morris indicates that Kunkle and Holmes directed this classification. When Kaydon purchased Tridan there were a number of accounts receivable that could not be collected and had to be written off. There were also inadequate reserves on the books to reflect these uncollectible, outstanding accounts. Morris also attributes this problem to Kunkle and Holmes who

---

[3] Canfield Technologies is a third corporation acquired by Kaydon.

directed the reserves. In her deposition, Morris stated Benjamin worked with her on weekly flash reports and the financial format. Morris indicated Benjamin "called me more than I called him because of things they wanted done differently on the financial format."

Benjamin would also review the monthly closing process each month for accuracy while Morris was Controller. Benjamin asserts that he required Morris to forward a detailed balance to him so he could review it for accuracy before allowing it to be incorporated into Kaydon's financial reporting system because he did not have confidence in her work. Morris indicates that Benjamin always had the responsibility to review this information and never made any substantive changes to her monthly reports. The parties also dispute whether Benjamin had to correct the accuracy of Morris's work on several accounting reports. Benjamin indicates he determined Morris did not have a thorough knowledge of generally accepted accounting principals.

In late 2000, Benjamin, Brocci, and Holmes decided to replace Morris as controller because they did not believe Morris had the education, experience, or skills needed to fulfill this role since Kaydon was a publically traded corporation. Neither Benjamin nor Holmes complained to Morris regarding her performance prior to her demotion. Morris testified in her deposition that Holmes had previously indicated Morris was doing a great job. Benjamin began the search for a new controller in November 2000. In March 2001, Holmes met with Morris and told her that her job title would be changed to assistant controller and that her job duties would be the same as those she performed previously as assistant controller. Holmes further informed Morris that neither her salary nor office would change, but her job title would change because Tridan needed a controller with more experience. Holmes told Morris that he hoped she would stay with the company and that Morris would need to train the new controller to assist in the transition.

Mark Campbell was hired as controller for Tridan in March 2001 and became responsible for both Tridan's and Indiana Precision's accounting. His starting salary was $65,000 per year, and he currently makes $76,426 per year. Prior to working at Tridan, Campbell was a financial analysis and cost accounting supervisor at NACCO Materials Handling Group, a publicly traded corporation. His job responsibilities included assisting in planning and completing an annual operating plan and quarterly forecast, long range business plan, and the financial portion of the capital budget. Campbell also prepared the quarterly forecast, prepared all required government reporting, presented and explained financial results during monthly operating reviews, and provided ad-hoc analysis and reporting for local, division, and corporate management. Campbell served as senior cost accountant at NACCO from 1988 to 1995 after serving as units cost accountant from 1986 through 1988.

After Campbell began at Tridan, Morris assisted him in learning Tridan's system for accounting for equipment being built, Tridan's system for payroll and accounts receivable and accounts payable, and other procedures used by Tridan's factory workers to report time and account for the cost of each job. Campbell performs each of the job responsibilities listed in the current job description for the controller position at Tridan. He also regularly presents proposals for increasing profitability to Tridan's general manager and regularly implements the Sarbanes-Oxley Act, which includes establishing and maintaining an adequate internal control structure and procedures for financial reporting in publically traded corporations. Benjamin indicates in his affidavit that he did not need to review Campbell's financial reports before forwarding them to Kaydon's management personnel.

Morris asserts in her affidavit that Campbell did not possess a sufficient knowledge of Tridan's standard journal entries to be capable of explaining some of the company's procedures.

As a result, she would meet with Benjamin to explain the accounts. Morris asserts she had to instruct Campbell in basic accounting procedures after he took her position. Also according to Morris, Campbell never performed any function as controller other than budgeting and forecasting. In addition, Morris asserts Benjamin made corrections to month end financials prepared by Campbell up until the time she left Tridan.

In 2002, Kaydon had in excess of 1800 employees. There were only two females in management positions: Morris and Sylvia Switzer. Switzer served as the export shipping manager. In 2001, Switzer was paid $33,372 per year. On March 3, 2003, Switzer's job title was changed from export shipping manager to export/traffic administrator. As a result, Switzer was reclassified from a manager to a clerical worker and was therefore no longer eligible for raises. After the reclassification, Switzer announced that she was retiring. Morris asserts that she knew that Holmes demoted Switzer because she was a female. Morris asserts that after Kaydon purchased Tridan, Holmes ensured that male management employees retained their management titles and job classifications despite the fact that they did not manage anyone. As a result, they received significantly higher salaries. Morris also testified in her deposition regarding Rene Bryant, a female who worked as purchasing manager at Tridan. Bryant was replaced by Dwight Palmer. Morris asserts Bryant was also demoted due to her sex. Tridan indicates that Bryant's job title was changed to buyer, but neither her pay nor responsibilities changed.

In June 2003, Morris was told she would need to perform export/traffic administrator responsibilities because of Switzer's retirement. At that time, Tridan's business was down approximately 50% for a period of several years. Campbell told Morris he was asking her to do this job in an attempt to save money. Morris was familiar with the export/traffic administrator

responsibilities because she had filled in for Switzer when she was out of the office. Morris was only asked to assume these responsibilities until business picked up, and her pay was not decreased when she took on these responsibilities. The parties dispute whether Morris was asked to give up her accounting and human resource duties at that time. Morris asserts that she told Campbell she did not want to do shipping because she knew the position had been reclassified as a clerical position. According to Morris, she was told she could either quit or do the job. On June 23, 2003, Morris resigned her position at Tridan.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988).

## I. Equal Pay Act Claim

The Equal Pay Act (EPA), part of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, prohibits paying male and female workers different wages based solely on gender. 29 U.S.C. § 206(d). To establish a prima facie case of discrimination under the EPA, Morris must demonstrate

that (1) different wages were paid to employees of the opposite sex; (2) the employees performed equal work requiring equal skill, effort, and responsibility; and (3) the employees had similar working conditions. Fyfe v. City of Fort Wayne, 241 F.3d 597, 600 (7th Cir. 2001). "In determining whether two jobs are equal, the crucial inquiry is 'whether the jobs to be compared have a common core of tasks, i.e., whether a significant portion of the two jobs is identical.'" Cullen v. Indiana Univ. Bd. of Tr., 338 F.3d 693, 698 (7th Cir. 2003), quoting Fallon v. Illinois, 882 F.2d 1206, 1209 (7th Cir. 1989). "Once the plaintiff establishes a common core, the court must ask whether any additional tasks make the jobs substantially different." Cullen, 338 F.3d at 698. No proof of discriminatory intent is required under the EPA. Cullen, 338 F.3d at 698.

Defendants concede that Campbell was paid more than Morris and that they worked under similar conditions. With regard to the second element of the prima facie case, the court must consider three separate elements of the jobs being compared: skill, effort and responsibility. 29 U.S.C. § 206(d)(1). Each element must be met individually to establish a prima facie case. 29 C.F.R. §1620.14. "Skill includes consideration of such factors as experience, training, education, and ability." 29 C.F.R. 1620.15(a). However, "[p]ossession of a skill not needed to meet the requirements of the job cannot be considered in making a determination regarding equality of skill." 29 C.F.R. 1620.15(a). Individual qualifications are irrelevant at this point in the analysis because the issue is comparison of jobs. See Cullen, 338 F.3d at 699.

Once a plaintiff establishes a prima facie case, the employer may offer an affirmative defense by explaining that the pay differential is due to seniority, a merit system, quantity or quality of work product, or "any other factor other than sex." 29 U.S.C. § 206(d); see also Markel v. Bd. of Regents of the Univ. of Wis. Sys., 276 F.3d 906, 913 (7th Cir. 2002). The "any other factor" affirmative

defense, which Defendants rely on in this matter, is a "broad catch-all exception that embraces an almost limitless number of factors, so long as they do not involve sex." Fallon, 882 F.2d at 1211. This exception insures that courts do not substitute their judgment for that of employers. Fallon, 882 F.2d at 1211. "Education is a relevant consideration in determining whether disparate salaries exist for reasons other than sex." Cullen, 338 F.3d at 702.

     This court will assume for purposes of summary judgment that Morris could establish a prima facie case and will proceed to Defendants' defenses. Defendants assert that the pay difference in the instant case was due to the difference in the quality of work provided by Campbell and Morris, Campbell's greater education, and Campbell's greater experience, particularly in the area of accounting for publically traded corporations. This court initially notes that there are factual disputes as to the quality of work provided by Morris and Campbell. Accordingly, this factor will not be considered. Regarding education, while Morris did not earn a four year college degree, Campbell has a bachelor of science degree in accounting and a second bachelor of science degree in energy management. Campbell has also earned his masters in business administration. In addition, Campbell had experience in performing accounting functions for publically traded companies which Morris lacked. Campbell was a financial analysis and cost accounting supervisor at NACCO Materials Handling Group where he assisted in planning and completing an annual operating plan and quarterly forecast, long range business plan, and the financial portion of the capital budget. Campbell also prepared the quarterly forecast, prepared all required government reporting, presented and explained financial results during monthly operating reviews, and provided ad-hoc analysis and reporting for local, division, and corporate management. Campbell also worked as a senior cost accountant and units cost accountant at NACCO.

This court finds the instant case comparable to that of <u>Dey v. Colt Constr. Co. & Dev. Co.</u>, 28 F.3d 1446 (7th Cir. 1994). In <u>Dey</u>, the Seventh Circuit affirmed the district court's grant of summary judgment on plaintiff's claim under the EPA. Dey, a female, worked as a controller at the defendant construction company and was replaced by a man following her termination. The district court determined that defendant had met its burden of showing that its decision to pay a higher salary to Dey's male replacement was based on a factor other than sex, namely that her replacement had a four-year college degree and an MBA as opposed to Dey's two-year associate's degree. <u>Dey</u>, 28 F.3d at 1462. The Seventh Circuit stated that the fact that Dey's replacement had an MBA "would justify [defendant] paying him a higher salary to do a controller's duties." <u>Dey</u>, 28 F.2d at 1462. The court went on to state that "we may not second-guess the company's decision to pay more for an advanced business degree where there is no evidence that it paid women with similar degrees a lesser amount or that [the replacement's] degree was unrelated to the tasks assigned him." <u>Dey</u>, 28 F.2d at 1462. Likewise, no such evidence is before the court in this matter.[4] Furthermore, Defendants' desire to have a controller with more experience in publically traded companies is a legitimate factor to consider in light of the fact Tridan was a privately held company before it was purchased by Kaydon. Therefore, this court finds that Defendants have met their burden of demonstrating that the pay disparity between Morris and Campbell was based on a factor other than sex. Accordingly, summary judgment is properly granted on Morris's claim under the EPA.

---

[4] Morris attempts to argue Defendants previously discriminated against Connie Thallamer who previously served as controller of Tridan and received a salary of $31,000 per year. After Thallamer's employment was terminated she was replaced by Ivan Fink, who received a salary of $40,000. While Thallamer was a certified public accountant and Fink was not, Fink had years of experience whereas Thallamer was a recent college graduate. Because Fink had more experience than Thallamer, this situation is not analogous to the disparity between the pay received by Morris and Campbell.

II.  Title VII Claim

Morris also brings a claim under Title VII, alleging that Defendants discriminated against her on the basis of her sex by: (1) demoting her to the position of assistant controller after Tridan was acquired by Kaydon; and (2) asking her to temporarily assume the position of export/traffic administrator.

A claim of discrimination under Title VII may be proven directly or indirectly. O'Neal v. City of New Albany, 293 F.3d 998, 1003 (7th Cir. 2002).  Morris lacks any direct evidence of sex discrimination and so her claim must be evaluated under the indirect method of proof as established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Traylor v. Brown, 295 F.3d 783, 787-88 (7th Cir. 2002).  Under this analytic framework, the plaintiff first must establish certain prima facie elements for a case of gender discrimination: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly-situated employees outside the protected class were treated more favorably.  Traylor, 295 F.3d at 788.  If the plaintiff can meet this initial showing, then the burden shifts to the employer to assert a legitimate, nondiscriminatory reason for the challenged action.  Simmons v. Chicago Bd. of Educ., 289 F.3d 488, 492 (7th Cir. 2002).  The burden then shifts back to the plaintiff to present evidence that would allow the trier of fact to conclude that the employer's proffered reason is pretextual.  Simmons, 289 F.3d at 492.

Morris is unable to establish a prima facie case because she cannot demonstrate a similarly situated employee outside the protected class was treated more favorably.  "A plaintiff may demonstrate that another employee is 'similarly situated' to her by 'showing that there is someone who is directly comparable to her in all material respects.'"  Peele v. Country Mut. Ins. Co., 288 F.3d

319, 330 (7th Cir. 2002), quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). In determining whether employees are similarly situated, the court is to "look at all relevant factors." Peele, 288 F.3d at 330. Morris cannot establish a similarly situated employee was treated more favorably. As discussed above, Campbell is not a similarly situated male due to his educational background and greater experience in accounting for publically traded companies. Morris has presented no other male employees with which she could be found to be similarly situated.

Even if Morris were to meet her prima facie case, however, Defendants have proffered legitimate nondiscriminatory reasons for their action. Defendants assert that Morris was demoted to assistant controller due to her poor work performance, her inexperience in performing accounting for publically traded corporations, and her lack of education in comparison to Campbell. As concerns Defendants' request that Morris temporarily assume the position of export/traffic administrator, Defendants indicate Morris had previously filled in on this position and was thus acquainted with how the job should be done. In addition, Tridan was enduring financial hardships and indicated to Morris that they would look for someone to permanently fill the position once its economic outlook improved. Morris attempts to demonstrate these reasons are pretextual by pointing to Sylvia Switzer and Rene Bryant, two women whom Morris asserts were demoted because of their sex. However, Morris has provided neither deposition testimony nor affidavits from these women. This court only has the Morris's unsubstantiated deposition testimony and her affidavit to support these allegations which this court finds inadequate to create a genuine issue of fact. "Conclusory allegations, unsupported by specific facts, will not suffice" to defeat summary judgment. Payne v. Pauley, 337 F.3d 767, 773 (7th Cir. 2003). Morris also argues that there were

other men who were capable of filling the position of export/traffic administrator but she was chosen to fill the spot because she is a woman. Again, this court only has Morris's unsubstantiated deposition testimony and affidavit to support this assertion. Therefore, because Morris cannot establish a prima facie case of discrimination in that she has failed to demonstrate a similarly situated male employee was treated more favorably, and in any event, cannot establish Defendants' reasons for the complained of actions are pretextual, summary judgment is appropriate on Morris's Title VII claim.[5]

IT IS THEREFORE ORDERED:

    (1) Defendants' Motion for Summary Judgment (#24) is GRANTED.

    (2) Plaintiff's Motion to Compel (#36) is denied as MOOT.

    (3) The final pretrial conference scheduled for November 18, 2005, and the jury trial scheduled to begin December 12, 2005, are VACATED.

    (4) This case is terminated.

ENTERED this 28th day of October, 2005

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE

---

[5] Because this court has determined Morris cannot prevail on either claim brought in this case, the issue of whether Kaydon is a proper party to this suit need not be reached.